UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
DIAMOND PHONE CARD, INC.,
SAMSUDDIN PANJWANI, and
NASREEN GILANI,

                         Plaintiffs,

    -against-

UNITED STATES OF AMERICA, and
A NUMBER OF UNIDENTIFIED
INTERNAL REVENUE AGENTS,

                         Defendants.
---------------------------------------------------------X

MEMORANDUM AND ORDER

15 CV 3156

(Wexler, J.)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ JUN 29 2016 ★ 

LONG ISLAND OFFICE

APPEARANCES:

    BASCH & KEEGAN, LLP
    BY: John A DeGasperis, Esq.
    307 Clinton Avenue & P.O. Box 4235
    Kingston, NY 12402
    Attorneys for Plaintiffs

    U.S. DEPARTMENT OF JUSTICE
    Caroline D. Ciraolo, Acting Assistant Attorney General
    Tax Division
    BY: Stephanie Weiner Chernoff, Esq.
    P.O. Box 55
    Washington, D.C. 20044
    Attorneys for Defendant

WEXLER, District Judge:

    Before the Court is the motion of Defendant United States of America ("Defendant") to dismiss Plaintiffs' first, second, third and fifth causes of action of the Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Defendant also seeks to have Plaintiffs Samsuddin Panjwani, ("Panjwani") and Nasreen Gilani ("Gilani") dismissed from the complaint. Plaintiffs' oppose. For the reasons stated below, Defendant's motion is granted in part, and denied in part.

## BACKGROUND

This case involves a claim for a tax refund filed by the Plaintiffs in July 2007 and ultimately denied in June 2013. According to the complaint, Plaintiffs submitted to the IRS a request for a tax refund, ultimately revised to the amount of $14,462,484.23, for excise taxes paid prior to August 2006 on pre-paid phone cards sold by Plaintiffs ("Refund"). SAC ¶¶ 25-31.

Plaintiffs allege that in June 2008 they were told orally by an IRS agent that the refund claim had been approved and a check would be forthcoming, some time after the Fourth of July. SAC ¶ 32. Soon thereafter, in late July 2008, a criminal investigation was initiated into Diamond Phone Cards' business operations and the activities of its principals, and a valid search warrant was executed at Plaintiffs' offices and materials were seized. SAC ¶¶ 33-46. Two years later, in August 2010, Plaintiffs Samsuddin Panjwani ("Panjwani") and Nasreen Gilani ("Gilani") were arrested in their home and charged with structuring financial transactions to evade currency reporting requirements. SAC ¶¶ 47-54.

Plaintiffs allege that some time after the arraignment on the annual charges, Plaintiffs Panjwani and Galini scheduled a meeting with their lawyers and the Assistant U.S. Atttorney ("AUSA") of the Eastern District of New York, Carrie Capwell. During that meeting, Galini's lawyers asked about the status of the Refund, and after the meeting AUSA Capwell called defense counsel and "confirmed the IRS was, in fact, holding the refund." SAC ¶¶ 55-58. Plaintiffs allege that Capwell's "position changed" from her earlier stance that Galini and Panjwani serve jail time once she learned of the Refund. SAC ¶ 59. Ultimately, the parties negotiated a plea resolution with no jail time, which deal was memorialized in a written plea agreement, which acknowledged that defendant consented to the forfeiture of "($3,980,000.00)

currently being held by the [IRS] (the "Forfeited Sum"), and which would have otherwise been paid to the defendant[s]." Plaintiffs Galini and Panjwani pled guilty pursuant those plea agreements on August 5, 2011 and September 23, 2011. SAC ¶¶ 60-62. Thereafter, a civil forfeiture proceeding was initiated, and on March 18, 2011, the parties executed a Stipulation of Settlement and Decree of Forfeiture, which Plaintiffs allege acknowledged Diamond Phone Card's ownership interest in the forfeited funds. SAC ¶¶ 63-66.

On February 23, 2012, the IRS issued a Formal Examination Report ("FER"), which precipitated a protest filed by Plaintiff Diamond, and then a subsequent filing by Diamond. SAC ¶¶ 70-79. Ultimately, on June 10, 2013, by way of written letter, the IRS Appeals Office issued a full disallowance to Plaintiffs' refund claim. SAC ¶¶ 80-81.

Plaintiffs bring this action asserting six claims: equitable relief under Federal Rules of Criminal Procedure ("Fed.R.Crim.P."), Rule 41(g) (first claim); a violation of the Fourth Amendment (second claim); a violation of the Fifth Amendment (third claim); a refund under 26 U.S.C. § 7422 (fourth claim); and, promissory estoppel (fifth claim). Defendant moves to dismiss Plaintiffs' first, second, third and fifth claims.[1] Plaintiffs oppose.

## DISCUSSION

I.  Standards on Motion to Dismiss

When considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaints as true and draw all reasonable inferences in favor of Plaintiff. Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106, 113 (2d Cir.

---

[1]Defendant does not move against Plaintiffs' claim for a refund under 26 U.S.C. § 7422. Indeed, Defendant asserts that claim is the only proper mechanism for Plaintiffs to obtain the relief they seek. See i.e., Defendant's Memorandum in Support ("Def. Mem."), at 4, 8 and 9.

2013) (citations omitted); see Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 58-59 (2d Cir. 2010). The plaintiff must plead enough facts "to state a claim for relief that is plausible on its face." BellAtlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The "short and plain" pleading standard of Rule 8 of the Fed.R.Civ.Proc. does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, at 678, quoting Twombly, at 555 (other citations omitted). A "formulaic recitation of cause of action's elements will not do... Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, at 679. Reciting bare legal conclusions is insufficient, and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, at 679. A pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Iqbal, 556 U.S. at 678-679.

II. <u>Plaintiffs' Claims</u>

    A. <u>Plaintiffs' First Claim - Return of Property Under Rule 41(g)</u>

Rule 41 of the Federal Rules of Criminal Procedure ("Fed.R. Crim. Pro.") governs "Search and Seizure." It defines "property" to "include[] documents, books, papers, and other tangible objects, and information." Rule 41(a)(2)(A). Rule 41(g) permits "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property [to] move for the property's return." It applies to property seized during a criminal investigation. See In re

Searches Conducted and Property Seized at Premises Located at 18 Old Neck Road, Manorville, New York, No. 13 MC 376 (LDW), 2013 WL 4039383, at *2 (E.D.N.Y. July 31, 2013) (motion for return of property during pending criminal investigation denied).

Plaintiffs' SAC claims that the "IRS unlawfully seized the Refund as part of a criminal investigation into Dismon Phone Card's business practices." SAC ¶ 83. It alleges "the IRS did not have a valid warrant that authorized the seizure of the Refund," SAC ¶ 84, and that "[t]he IRS has refused to return the Refund to Diamond Phone Care or its principals." SAC ¶ 86. It seeks "the return of the Refund and all of the business records[2] that it seized during the search in 2008." SAC ¶ 87.

Defendant argues that Plaintiffs' claim is misplaced. Rule 41(g) permits a motion to return property seized or deprived in connection with a criminal investigation; it is not a vehicle to claim entitlement to a tax refund.

The Court agrees. Rule 41(g) applies in the context of a criminal investigation, to property seized or deprived in the context of that investigation. Plaintiffs' entitlement to the Refund, whether valid or not, is not "property" as defined by Rule 41. Furthermore, Rule 41(g) "simply provides for the return of seized property, [and] does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property." Adeleke v. U.S., 355 F.3d 144, 151 (2d Cir. 2004). While Plaintiffs style this claim as one seeking "Equitable Relief," see SAC "First Cause of Action," it is, at essence, a claim for damages for the tax refund they claim they should be granted. The Court finds that Plaintiffs'

---

[2]The Court notes that neither party addressed Plaintiffs' claim for the return of "all of the business records that were seized in the search of 2008," (SAC ¶ 87), and therefore the Court's review is limited to the return of the Refund.

-5-

claim is for the return of seized property under Rule 41(g) is misplaced, and grants Defendant's motion to dismiss this cause of action.

B. <u>Plaintiffs' Second and Third Claims - Violations of the Fourth and Fifth Amendments</u>

Plaintiffs allege that Defendant violated the Fourth Amendment by "unlawfully seiz[ing] the Refund without a valid warrant." SAC ¶ 93. They allege the Fifth Amendment was violated because "[t]he IRS unlawfully seized the Refund without giving Diamond Phone Card prior notice of the seizure." SAC ¶ 97. The critical issue to each of these claims is whether Diamond Phone Card had a "property interest" in the Refund. Defendant argues that no matter what the IRS agent may have said orally, or what the AUSA put in the plea agreement for forfeiture agreement, there is no property right in a refund until the IRS officially decides on and grants the refund pursuant to 26 U.S.C. § 6402.[3] See Def. Mem., at 3-4.

This issue was addressed in <u>In re Sissine</u>, 432 B.R. 870, 882 (Bankr. N.D. Ga. 2010), where the bankruptcy court reviewed whether the bankruptcy estate had a property interest in a claim to a tax refund. The court found it did not, stating "[t]he Internal Revenue Code is clear that a debtor's claimed refund is contingent until it is determined that a debtor is entitled to a refund." <u>In re Sissine</u>, 432 B.R. 870, 882 (Bankr. N.D. Ga. 2010) (citing <u>In re Luongo</u>, 259 F.3d 323, 335 (5th Cir. 2001)). "A taxpayer's overpayment does not create a right to the funds. Rather, the IRS must first determine that the overpayment should become a refund. Only then does the taxpayer have a right to receive the funds." <u>Id.</u> (citing <u>In re Pigott</u>, 330 B.R. 797, 802 (Bankr.S.D.Ala.2005) ("[T]axpayer only has a refund right after the IRS has credited any

---

[3]This gives the Secretary the authority to, in the case of an overpayment, credit the amount of the overpayment and issue a refund. 26 U.S.C. § 6402(a).

overpayments to other unpaid taxes.") and In re Shortt, 277 B.R. 683, 688 (Bankr.N.D.Tex.2002) (determining that if the amount of the tax overpayment is completely offset then "there is no net refund to become property of the estate")). "Since an overpayment is not credited to the debtor until after offsets have occurred, if the IRS chooses to make such offset, there is no property interest in a debtor until the refund has been declared." Id. (citing In re Pigott, 330 B.R. 797, 802 (Bankr.S.D.Ala.2005)). This distinction between an "overpayment" and a "refund" was highlighted in U.S. Dep't of Agric. Rural Hous. Serv. v. Riley, 485 B.R. 361, 365 (W.D. Ky. 2012). There, the court noted that "[a]n overpayment of taxes is any payment made by the taxpayer that is over and above tax liability," while "[a] refund is the amount the IRS is obligated to pay the taxpayer after the IRS has exercised its right to offset pursuant to 26 U.S.C. § 6402." Id. (citing In re Pettibone Corp., 151 B.R. 156, 163 (Bankr.N.D.Ill. 1992)).

The parties don't disagree on this law that there is no refund until the IRS says there is a refund. Compare Def. Mem., at 3-4 with Plaintiffs' Memorandum In Opposition ("Pl. Mem."), at 8-9. But Plaintiffs argue that their property interest in the refund was created by the oral statement by the IRS agent in June 2008, followed by the written statement in the plea agreement and decree of forfeiture in connection with the criminal prosecution in 2011. See Pl. Mem., at 8-9. Defendant argues that this is essentially an attempt to estop the IRS from denying the refund, and that estoppel against the government has long been rejected.

In OPM v. Richmond, 496 U.S. 414 (1990), the Supreme Court addressed the question of whether incorrect advice from Navy employee relations personnel would estop the federal government from denying disability annuity payments to the retired Navy employee who relied on that advice. In denying estoppel, the Court stated that "[f]rom our earliest cases, we have

recognized that equitable estoppel will not lie against the Government as it lies against private litigants." Id., 496 U.S. at 419. The Court cited Lee v. Munroe & Thornton, 7 Cranch 366, 3 L.Ed. 373 (1813), where it "held that the Government could not be bound by the mistaken representations of an agent unless it were clear that the representations were within the scope of the agent's authority." Id. The Court recognized that while it continually held open the possibility for a valid estoppel claim against the Government, it "reversed every finding of estoppel that we have reviewed." Id., at 422. It found that "judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized," id., at 426, and that "claims for estoppel cannot be entertained where public money is at stake." Id., at 427.

The Court is persuaded that this reasoning is fatal to Plaintiffs' claims under the Fourth and Fifth Amendments. Those claims rest on the theory that a property interest in the Refund was created by the oral statements of the IRS agent or the plea agreement with the U.S. Attorney's Office, and therefore the Government should be estopped from denying that property interest. Yet, the Supreme Court has stated clearly that "claims for estoppel cannot be entertained where public money is at stake," id., at 427, and has resisted applying equitable estoppel against the government. Id., at 419. Even accepting Plaintiffs' factual allegations as true as the Court must, Supreme Court precedent precludes Plaintiffs from seeking the funds from the Government by estoppel, and therefore, Defendant's motion to dismiss Plaintiffs' second and third claims is granted.

### C. Plaintiffs' Fifth Claim - Promissory Estoppel

Plaintiffs also bring a claim for promissory estoppel. Like the Fourth and Fifth Amendment claims, promissory estoppel rests on the theory that a property interest in the Refund was created by the IRS agent or agreement with the U.S. Attorney's Office. As discussed above, equitable estoppel cannot be used against the government where "public money is at stake." damages. Supra, at 7-8; Richmond, 496 U.S. at 426-427. For the same reasoning, this claim is dismissed.

This claim also fails because Plaintiffs fail to allege the required elements of estoppel. A party seeking estoppel "must have relied on its adversary's conduct 'in such a manner as to change his position for the worse,' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." Heckler v. Cmty. Health Servs. of Crawford Cty., Inc., 467 U.S. 51, 59 (1984). Even accepting Plaintiffs' allegations as true, they fail to show how Plaintiffs relied on the IRS agents (or the Assistant U.S. Attorney's) conduct in a manner that "change[d] their position for the worse." Id. Plaintiffs allegations indicate they may have been impatient or frustrated waiting for the Refund to be paid out, as they allegedly had been told by the IRS agent that they would be, they fail to allege that they would have done anything differently, or changed their position for the worse because of those statements. Accordingly, and for this additional reason, Defendant's motion to dismiss this claim is granted.

### III. Standing

Defendant also moves to have Plaintiffs Gilani and Panjwani dismissed because they fail to allege an injury, since the claim for the Refund rests with Plaintiff Diamond Phone Card alone.

As alleged in the SAC, Galini and Panjwani "owned the business together." SAC ¶ 8. The Court finds as the principals of the business Diamond Phone Card, which is the entity that has entitlement to the Refund, they sufficiently allege an injury to continue in this action. Defendant's motion to dismiss them is denied.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss Plaintiffs' first, second, third and fifth claims is granted; Defendant's motion to dismiss Plaintiffs Galini and Panjwani is denied. Counsel are directed to proceed with discovery on Plaintiffs' fourth claim for a refund pursuant to 26 U.S.C. § 7422.

SO ORDERED

                                                s/ Leonard D. Wexler
                                                LEONARD D. WEXLER
                                                UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
        June 29 2016